IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERONICA WATSON, individually and on behalf of others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>FRANCISCAN ALLIANCE, INC., an Indiana Nonprofit Corporation,<br><br>Defendant. | Case No. 1:25-cv-11043<br><br>HON. JOAN H. LEFKOW |

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 3

ARGUMENT ............................................................................................................... 4

I. Plaintiff's Complaint Should be Dismissed Under Rule 12(b)(1) for Lack of Standing Where She Alleges No Injury-in-Fact from Interception of Website Data ........ 4

II. The Court Should Dismiss Plaintiff's Claims Under Rule 12(b)(6) Because the Alleged Facts Are Insufficient to State a Claim ........................................................ 6

A. Plaintiff Fails to State a Claim for Violation of the ECPA. ................................. 6

1. The ECPA Does Not Impose Civilly Liability for "Procurement" of Third-Party Interception ............................................................ 7

2. Franciscan Was a Party and Intended Recipient of Users' Communications with the Website ................................................ 8

3. The Complaint Fails to Allege Any Identifying Information Was Disclosed ............................................................................................ 11

4. Plaintiff Fails to Allege That Any of Her Communications Were Intercepted ......................................................................................... 12

B. Plaintiff Fails to State a Claim for Invasion of Privacy, Where Franciscan and Its Service Providers Were the Intended Recipients of the Communications ............................................................................................ 13

C. Plaintiff Cannot Prevail on a Claim for Unjust Enrichment ............................... 15

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Acceptance Co. v. Yale Ins. Agency*,
648 N.E.2d 971 (Ill. App. Ct. 1995) ....................15

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023), reh'g denied, 2023 WL 6144390 (7th Cir. Sept. 20, 2023) ....................5

*Bazile v. Fin. Sys. of Green Bay, Inc.*,
983 F.3d 274 (7th Cir. 2020) ....................5

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................11

*Cleary v. PhilipMorris Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................15

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ....................13, 14

*Doe 1 v. Chestnut Health Sys., Inc.*,
2025 WL 1616635 (C.D. Ill. June 6, 2025) ....................11

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................10

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)....................11, 13

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ....................8, 13

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2021) ....................7

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................9, 14

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ..........11, 12, 13

*Nguyen v. Abbott Lab'ys, Inc.*,
2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ..........9

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ..........7

*Ramirez v. LexisNexis Risk Sols.*,
729 F. Supp. 3d 838 (N.D. Ill. 2024) ..........15

*Shefts v. Petrakis*,
954 F. Supp. 2d 769 (C.D. Ill. 2013) ..........7, 8

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ..........8, 9

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ..........14

*Valentine v. WideOpen W. Fin., LLC*,
288 F.R.D. 407 (N.D. Ill. 2012) ..........7

*Warth v. Seldin*,
422 U.S. 490 (1975) ..........5

**Statutes**

42 U.S.C.A. § 1320d(6) ..........11

18 U.S.C. § 2511(1)(a) ..........6, 7

18 U.S.C. § 2511(1)(d) ..........6

18 U.S.C. § 2511(2)(d) ..........8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ..........1, 2, 4, 5

Fed. R. Civ. P. 12(b)(6) ..........1, 2, 6

**DEFENDANT FRANCISCAN ALLIANCE, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Franciscan Alliance, Inc. ("Franciscan Health"), by and through its attorneys, hereby submits its Motion to Dismiss Plaintiff Veronica Watson's Class Action Complaint (ECF No. 1) (hereinafter "Complaint"), pursuant to Rule 12(b)(1) and 12(b)(6), and in furtherance of the same states the following:

## INTRODUCTION

Franciscan Health is one of many non-profit institutions recently sued for alleged privacy violations for use of a digital advertising tool on its website. Plaintiff Veronica Watson's suit, however, is uniquely defective because she has not (and cannot) allege that the Trade Desk tool intercepts any information that connects a specific individual's identity to their browsing history. Nor does Plaintiff colorably allege that her own information was intercepted. Thus, her Complaint merely alleges that, *hypothetically*, putative class members' browsing history *potentially* could be connected to them. This is insufficient.

Specifically, Plaintiff alleges that Franciscan utilized the Trade Desk advertising tool on its public-facing website ("the Website") and that, over the last five years, she browsed pages on the Website regarding health and treatment related information. She fails to specifically allege that the Trade Desk Pixel was on the Website when she used it. She also does not allege if or how any of her own browsing information was intercepted by Trade Desk, let alone any information connecting her identity with her browsing history. Although Plaintiff concludes that Franciscan violated HIPAA for failing to protect her protected health information ("PHI"), specifically a subset of data called individually identifiable health information ("IIHI"), she does not allege that she visited any pages reflecting her patient status or records.

Nevertheless, Plaintiff alleges that Franciscan violated the Electronic Communications Privacy Act ("ECPA") by "procuring" the Trade Desk's interception of her protected health information and "using" that intercepted information for commercial purposes. She also alleges Franciscan is otherwise liable for Invasion of Privacy (i.e., Intrusion Upon Seclusion) and Unjust Enrichment claims. These claims must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on multiple grounds.

First, by failing to allege any particularized and concrete harm to herself, Plaintiff fails to establish any injury-in-fact sufficient to afford standing to bring this suit. The Court therefore does not have subject matter jurisdiction over her claims.

Second, Plaintiff fails to state an ECPA claim. As a starting point, secondary liability theories, such as "procuring" or "aiding and abetting" interceptions, are not viable bases for civil liability under the ECPA. And Plaintiff cannot adequately plead a direct interception claim against Franciscan where it was a "party"—or intended recipient—of the communications at issue. Plaintiff's ECPA claim also fails because it does not plausibly allege that any visitors' browsing information was connected to their identities. Finally, Plaintiff fails to allege Trade Desk intercepted *any* of her communications with the Website, let alone any PHII.

Third, Plaintiff's Invasion of Privacy claim is likewise ill-conceived. Simply put, Plaintiff cannot claim that Franciscan "intruded" upon a private space when Plaintiff visited Franciscan's Website and voluntarily shared her information. These alleged facts are not a viable basis for an invasion of privacy claim under Illinois law.

Fourth, Plaintiff's unjust enrichment claim cannot survive as a standalone claim. Rather, it rests upon Plaintiff's related causes of action, which here, cannot survive. Therefore, Plaintiff's unjust enrichment claim also fails.

## FACTUAL BACKGROUND

Franciscan Health is a non-profit health system based out of Indiana and Illinois. *See* Compl. ⁋⁋ 7-8. Franciscan Health's website is located at www.franciscanhealth.org ("Website"). *Id.* ⁋ 1. This is a publicly-available website that both patients and non-patients can access. *Id.* ⁋ 2. Website visitors can use the site to find articles and blogs, learn about Franciscan's locations, or research providers. *Id.* ⁋ 34. Plaintiff does not allege that any patient-treatment information related to the provision of healthcare (like "MyChart" patient portals) is located on this domain. *See id.* ⁋ 34. Rather, she contends that the information "intercepted through this track[ing] includes electronic communications between the visitor and Franciscan regarding the visitor's healthcare interests, treatment-seeking behavior, and medical preferences." *Id.* ⁋ 45.

Plaintiff alleges that Franciscan collected Website information through a technology called the Trade Desk Pixel. *Id.* ⁋⁋ 20-33. She alleges that the Trade Desk Pixel utilizes a "Trade Desk ID" ("TDID") assigned to specific users. *Id.* ⁋ 24. She does not contend whether and how the TDID can be tied to an actual person's identity. Instead, she alleges that a TDID allows Trade Desk to "track visitor behavior," "create comprehensive user profiles based on browsing behavior," and thereby "enable targeted advertising." *Id.* ⁋ 25. Plaintiff also alleges that the Trade Desk Pixel uses IP addresses to build profiles on users. *Id.* ⁋⁋ 28-31. She theorizes that these IP addresses can be tied to geographic areas, and in conjunction with the TDID, can potentially be used to assess the location and household of a user. *Id.* ⁋ 30-31 ("IP addresses allow companies to target advertisements to users in specific geographic areas"). While Plaintiff concludes that the combination of the IP address and TDID may allow Trade Desk to "identify" specific individuals, she fails to provide an explanation for how the creation of "digital profiles" equates to users' identities (i.e. their names). *Id.*

With respect to Franciscan's Website, Plaintiff alleges that Franciscan "deliberately implemented The Trade Desk Tracker," and in so doing "procur[ed] the Trade Desk to intercept sensitive health information." *Id.* ⁋ 43. According to Plaintiff, pages on Franciscan's Website could reveal a "visitor's healthcare interests, treatment-seeking behavior, and medical preferences." *Id.* ⁋ 45. Plaintiff further alleges that these "healthcare interests" are combined with the TDID cookie and IP address that allows association of sensitive health information with users' "digital profiles." *Id.* Thus, Plaintiff contends, Franciscan "procured the Trade Desk's services to intercept electronic communications," and has "aided, and abetted the interception of these communications by The Trade Desk." *Id.* ⁋ 60. In turn, Plaintiff says, Trade Desk uses this information for "targeted advertising and other commercial purposes, including real-time ad bidding, behavioral segmentation, and cross-contextual tracking." *Id.* ⁋ 47.

Plaintiff alleges that she has been a patient of Franciscan for approximately five years. *Id.* ⁋ 79. She contends that she has used the Website at various times, on different devices and browsers, to conduct research. *Id.* ⁋ 80. She does not allege that she has accessed her medical records, patient portal, billing information, or any treatment records through Franciscan's site during this timeframe. She does not specify what, if any, of this information has ever been intercepted by Trade Desk. And she does not contend that any of her browsing history or personal health information has been intercepted or disclosed at all.

## ARGUMENT

### I. Plaintiff's Complaint Should be Dismissed Under Rule 12(b)(1) for Lack of Standing Where She Alleges No Injury-in-Fact from Interception of Website Data

Plaintiff's Complaint should be dismissed for lack of standing because her allegations are insufficient to establish injury-in-fact.

A Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to a court's subject matter jurisdiction. Standing is an essential ingredient of subject-matter jurisdiction. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). Plaintiff bears the burden of establishing the elements of standing: (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id.* at 278. In putative class actions, the named plaintiff must demonstrate that they "personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Here, Plaintiff fails to allege facts sufficient to establish injury-in-fact. That is because she fails allege any harm that she suffered. In fact, she has not alleged that *any* of her communications were intercepted by the Trade Desk. *See* Compl. ⁋⁋ 79-80. To be sure, Plaintiff does allege that the Trade Desk Pixel was implemented on Franciscan's Website (at some point in time), and that she visited said Website (at various times over the last five years). However, based on her allegations, any harm to her is purely hypothetical and requires the parties and the Court to engage in conjecture about whether she contends any of her own information was ever disclosed. *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 978 (7th Cir. 2023), *reh'g denied*, 2023 WL 6144390 (7th Cir. Sept. 20, 2023) (finding no standing where Plaintiffs' allegations amounted to guesswork and hypothetical harm). Indeed, even Plaintiff's allegations about her use of the Website are incredibly vague. She alleges that she has "used Franciscan's Website multiple times" over the last five years and that at "various times" she accessed the Website to search for "provider locations, doctors and medical professionals," "to search for information on treatments, and to receive health information." Compl. ⁋ 80. Plaintiff's allegations amount to mere legal conclusions that she and

the class members have "suffer[ed] statutory injury, entitling them to statutory damages." *See, e.g.*, *id.* ⁋ 78. Plaintiff lacks standing, and her Complaint should be dismissed.

## II. The Court Should Dismiss Plaintiff's Claims Under Rule 12(b)(6) Because the Alleged Facts Are Insufficient to State a Claim

All of Plaintiff's claims should also be dismissed because she fails to adequately state all three causes of action under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* And while the Court must draw all reasonable inferences in favor of the plaintiff, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*

### A. Plaintiff Fails to State a Claim for Violation of the ECPA.

In Count I of the Complaint, Plaintiff alleges that Franciscan violated the ECPA by procuring Trade Desk's interception of Plaintiff and putative class members' electronic communications. Plaintiff's ECPA claim, however, is riddled with defects and must be dismissed.

The ECPA provides civil liability for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used." 18 U.S.C. § 2520(a).

Here, Plaintiff alleges that Franciscan violated the ECPA by "procur[ing] the Trade Desk to intercept [the Website's] visitors' electronic communication." Compl. ⁋ 96; 18 U.S.C. § 2511(1)(a). Further, Plaintiff contends Franciscan "intentionally use[d] or endeavor[ed] to use the contents of these intercepted communications, knowing or having reason to know the information was obtained through illegal interception" in violation of Section 2511(1)(d). 18 U.S.C. § 2511(1)(d). Plaintiff's ECPA claim fails on multiple grounds as detailed below.

### 1. *The ECPA Does Not Impose Civilly Liability for "Procurement" of Third-Party Interception*

Plaintiff alleges that Franciscan procured a third-party (Trade Desk) to intercept the contents of electronic communications. That claim fails as a matter of law.

Courts have consistently held that the ECPA does not provide a private right of action against parties who allegedly "procured" a third-party interception. *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 (N.D. Ill. 2012) (noting courts have generally declined to find a private cause of action against those who aid and abet or conspire with others to intercept, disclose, or use electronic communications in violation of the ECPA); *see Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246-47 (10th Cir. 2021) (holding that there is no civil ECPA claim for "procuring" or "aiding and abetting"); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same). The plain language and legislative history of the ECPA make clear that "procuring" or "aiding and abetting" liability was expressly stricken from the statute's civil liability purview. Specifically, the clause "or procures any other person to intercept, disclose, or use such communications" was removed from the portion of the statute providing a civil remedy. *Shefts v. Petrakis*, 954 F. Supp. 2d 769, 775 (C.D. Ill. 2013).

Here, Plaintiff's ECPA claim fails because it revolves around a secondary liability theory. Plaintiff alleges that (1) "[b]y deliberately implementing The Trade Desk tracking code on its Website, Franciscan *procured* The Trade Desk to intercept its visitors' electronic communications," (2) "[t]hrough this *procurement*, Franciscan caused The Trade Desk to intercept, in real-time, the electronic communications of users," and (3) "[u]sers did not consent to Franciscan's *procurement* of third-party interception." Compl. ⁋⁋ 96, 97, 100 (emphasis added). Plaintiff's ECPA claim under § 2511(1)(a) thus relies on secondary liability and cannot stand. Allowing this claim would permit Plaintiff to circumvent Congress' intent to limit civil liability to

those who have actually engaged in the prohibited practices. *See Shefts*, 954 F. Supp. 2d at 777. Accordingly, Plaintiff's ECPA claim premised on this "procurement" theory must be dismissed.

**2. *Franciscan Was a Party and Intended Recipient of Users' Communications with the Website***

Plaintiff's ECPA claim for "use" of communications fails because Franciscan was an intended party to the communications, and the Complaint does not establish any exception to this bar on her claim.

The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d). In other words, under the ECPA it is not unlawful for a party to intercept its own communications. *See id*.

Here, Plaintiff's ECPA claim fails because Franciscan was the intended recipient of the alleged communications and, consequently, could not "intercept" Plaintiff's communications. Indeed, the only communications Plaintiff alleges were intercepted were users' interactions with Franciscan's website. Compl. ¶¶ 34-36 (alleging that Franciscan is the operator of the Website that Plaintiff communicated with). It is well-established that where a defendant is a party that was meant to receive a plaintiff's communications on a website, a purported interception is not actionable. *See Hartley v. Univ. of Chicago Med. Ctr.,* 2023 WL 7386060, at *1 (N.D. Ill. Nov. 8, 2023). Accordingly, there can be no dispute that Franciscan was a necessary party to the communications at issue and Plaintiff cannot state a claim under the ECPA. Moreover, Plaintiff's allegation that Franciscan's conduct violates HIPAA is insufficient to establish that the crime-tort exception applies for three reasons. Compl. ¶ 38.

*First*, Plaintiff has failed to plausibly allege that any HIPAA information was disclosed because as alleged, the information purportedly disclosed does not relate "to the past, present, or future physical or mental health or condition of an individual." *Smith v. Facebook, Inc.*, 262 F.

Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Such individually identifiable information ("IIHI") is any information that:

> (A) is created and received by a health care provider, health plan, employer, or health care clearinghouse; and (B) relates to the present, past, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and — (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual. 42 U.S.C. § 1320d(6).

But "merely browsing and searching [a health website] doesn't amount to a disclosure of individually identifiable health information." *Nguyen v. Abbott Lab'ys, Inc.*, 2025 WL 2299753, at *5 (N.D. Ill. Aug. 8, 2025). As alleged, the pages that Plaintiff points to contain "general health information that [wa]s accessible to the public at large," such that HIPAA does not apply. *Smith*, 262 F. Supp. 3d at 955; *see also Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 935–36, 939 (N.D. Ill. 2023) (allegations that "patient IP addresses, patient cookie identifiers, device identifiers, account numbers, URLs, other unique identifying numbers, characteristics, or codes, and browser-fingerprints" were transmitted did not "support an inference that [the defendant] disclosed its patients' [IIHI]"); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024 (Plaintiffs' ECPA claim failed even where clicks on a patient portal link were alleged because "the Website cannot distinguish between who is a patient and who is not a patient clicking on the "patient portal" link" and thus "the disclosure of data regarding what healthcare information someone searches for and whether someone clicks on the patient portal link does not *necessarily* implicate HIPAA"). As such, Plaintiff has solely alleged an interest in health information (rather than alleging access to a patient portal, medical records, test results, or patient status); the connection between this browsing history and Plaintiff's own state of health is too tenuous to support a claim that HIPAA requirements apply. *See Nguyen*, 2025 WL 2299753 at *5.

Moreover here, Plaintiff does not plausibly allege that the IP addresses and Trade Desk ID connects to the identity of a particular person, rather than a location or anonymous identifier. Thus, none of the information purportedly disclosed establishes that Plaintiff received any health care services from Franciscan.

Indeed, a federal district court specifically vacated guidance from the U.S. Department of Health and Human Services Office for Civil Rights ("OCR") to the extent it provides that HIPAA obligations are triggered in "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare providers." *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 789 (N.D. Tex. 2024). This decision was acknowledged by OCR[1], and its guidance remains under reconsideration and not in force. *Becerra* had precisely the facts alleged here: an unauthenticated website with basic information about health conditions and healthcare providers. Here too, the Complaint fails to plausibly allege that any personal medical history or IIHI was disclosed.

*Second*, although Plaintiff contends that HIPAA violations may constitute criminal violations, Plaintiff does not allege that Franciscan had the requisite criminal or tortious intent for the crime-tort exception. Instead, Plaintiff contends that the purpose of any alleged disclosures was to "monetize its patients' information," and for "advertising purposes"—not for any criminal or tortious aim. Compl. ¶¶ 39, 41. As such, the Complaint specifically alleges a commercial motivation rather than a criminal or tortious one. Thus, the ECPA's crime-tort exception does not apply. *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025).

[1] *Available at* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

*Third*, Plaintiff has not alleged any tortious or criminal conduct *independent of* the placement of the pixels, as required. It is well-established that exception only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself. *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023). Here, the only conduct alleged on the part of Franciscan is the "knowing[] implementation of third-party tracking technology on its Website." Compl. ⁋ 3. Because a "simultaneous tort arising from the act of [interception] itself is insufficient," Plaintiff has not pled any independently wrongful conduct for the purposes of the crime-tort exception. *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010); *see also Kurowski*, 683 F. Supp. 3d at 844 (the crime or tort exception "only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself."); *Doe 1 v. Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025).

Because the ECPA party exception applies here and the Complaint fails to plead facts to plausibly implicate the crime-tort exception, Plaintiff's ECPA claim fails.

**3. *The Complaint Fails to Allege Any Identifying Information Was Disclosed***

Plaintiff's ECPA claim fails for the independent reason that the Complaint does not plausibly allege that any individually identifiable information (IIHI or otherwise) was intercepted by Trade Desk.

When deciding whether a plaintiff has plausibly alleged that IIHI was obtained and improperly disclosed via a pixel tracker, courts seek to distinguish between tracking data derived from healthcare provider websites generally and tracking data which both relates to a specific individual's health and reasonably can be used to identify that individual. *Hannant v. Culbertson*, 2025 WL 2413894, at *4 (C.D. Ill. Aug. 20, 2025).

Here, Plaintiff fails to adequately allege that any of the URLs transmitted to Trade Desk are connected to any specific individual. Rather, Plaintiff alleges that two pieces of information

are connected to site visitors: (1) a "persistent identifier known as a Trade Desk ID" which is stored in users' browsers, and (2) an IP address. *See* Compl. ⁋⁋ 24, 28. Plaintiff has not plausibly alleged that these data points *identify* an individual. Starting with the Trade Desk ID, Plaintiff alleges that this is a "unique alphanumeric string" that tracks visitors across "The Trade Desk's entire ecosystem." *Id.* ⁋ 24. While Plaintiff alleges these TDIDs permit Trade Desk to create "user profiles" or "enable targeted advertising," Plaintiff does not allege any facts indicating that this user ID is at all linked to a specific person's identity—their name, or anything else that would differentiate them. *See Id.* ⁋⁋ 24, 25.

Similarly, Plaintiff contends that the Trade Desk "collects users' IP addresses." *Id.* ⁋ 28. As alleged, this IP address does not identify any specific individual. Rather, an IP address "guides or routes communications across the internet." *Id.* These addresses come from "networking devices such as modems as routers," which can be used by countless devices and identify "geographic areas," and at most, "<u>potentially</u> specific households." *Id.* ⁋ 29 (emphasis added). Plaintiff does not allege, however, that in disclosing with "95% accuracy" the general location or "approximate coordinates" of a router, that the IP addresses disclose the identity of an individual.

While Plaintiff ultimately concludes that the combination of the TDID cookies and IP addresses "creates a comprehensive digital profile that can identify specific individuals and their medical interests," Plaintiff fails to provide any context for how this information identifies an individual, and this conclusory allegation is not enough. *Kurowski*, 683 F. Supp. 3d at 842–43.

#### 4. *Plaintiff Fails to Allege That Any of Her Communications Were Intercepted*

A Wiretap Act claim requires a plaintiff to allege that their communications were intercepted by a third-party interloper. Plaintiff does not clear this threshold showing because she does not sufficiently allege *her own* communications were collected.

Here, Plaintiff solely contends that she has used the Franciscan website multiple times over the last five years "in order to search for provider locations, doctors and medical professionals. . . to search for information on treatments, and to receive health information." Compl. ⁋⁋ 79-80. These allegations are insufficient to establish a disclosure of Plaintiff's information to Trade Desk, let alone any IIHI disclosures. Plaintiff fails to allege which webpages she viewed, why she viewed them, or what information (if any) Trade Desk intercepted from those views. She does not allege that her IP address or her TDID was disclosed. She does not allege what information from her browsing activity were intercepted. Nor does she allege she received any targeted ads as a result of her searches. Thus, there is insufficient factual support to raise any inference that Trade Desk intercepted her health information. *Cf. Hannant*, 2025 WL 2413894, at *5 (dismissing ECPA claim based on conclusory allegation that defendant disclosed plaintiff's "status as a patient").

In analogous cases, such allegations do not suffice. For example, in *Kurowski v. Rush Sys. for Health*, plaintiffs alleged that defendant disclosed certain data through tracking pixels to third parties. *Kurowski*, 683 F. Supp. 3d at 836. However, plaintiffs in *Kurowski* solely contended that they were users of defendant's online patient portal. These claims could not survive defendant's motion to dismiss as they were "far too vague to allow an inference to be drawn that [defendant] was actually [collecting and] disclosing" plaintiffs' health data. *Kurowski*, 683 F. Supp. 3d at 843; *see also, e.g., Hartley v. Univ. of Chicago Med. Ctr.*, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) (complaint had "an absolute dearth of information specific to Plaintiff").

**B. Plaintiff Fails to State a Claim for Invasion of Privacy, Where Franciscan and Its Service Providers Were the Intended Recipients of the Communications**

Plaintiff's Invasion of Privacy claim fails because alleged disclosures of private personal information do not support a claim for unauthorized intrusion. Indeed, the core of the intrusion upon seclusion tort is "the offensive prying into the private domain of another." *Dinerstein*

*v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020). Thus, alleged "*disclosures* of private personal information 'do not support a claim for unauthorized intrusion.'" *Id.* (emphasis added).

Plaintiff's claim, however, does not relate to the "prying" into her private domain. *Dinerstein*, 484 F. Supp. 3d at 594 ("Examples of such 'offensive prying' are 'invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls.'")). Rather, she contends that Franciscan was the intended recipient of the information at issue, but procured the disclosure of her information to Trade Desk without authorization. This is not an unauthorized intrusion by Franciscan. To hold that this constitutes an invasion of privacy would inherently expand the nature of the claim. *See Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) ("a plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than intrusion").

Indeed, in another pixel case in this District, the plaintiff contended that a healthcare provider embedded source code on its website and its "MyChart" patient portal, which caused her private information to be captured and transmitted to Meta, Google, and others. *Kurowski*, 659 F. Supp. 3d at 943-44. The court ultimately found that the essence of plaintiff's claims related to the "deployment of third-party source code that causes the transmission of patient data" to third parties, which could not satisfy the "intrusion" element of an invasion of privacy claim. *Id.* at 943. Further, *Kurowski* noted that even if plaintiff adequately alleged that a third party invaded her privacy, their liability, if any, was not imputed to the defendant. *Kurowski*, 659 F. Supp. 3d at 944. The same logic applies here.

Because Plaintiff's contentions as to Franciscan do not amount to an unauthorized intrusion, Plaintiff's Invasion of Privacy claim should be dismissed.

### C. Plaintiff Cannot Prevail on her Claim for Unjust Enrichment

Plaintiff's unjust enrichment claim is not a standalone claim, but rather, a derivative claim arising out of the same set of facts from Plaintiff's ECPA and Invasion of Privacy claims. Because those two claims are defective and must be dismissed, Plaintiff's unjust enrichment claim fails.

"[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. PhilipMorris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011); *see also Alliance Acceptance Co. v. Yale Ins. Agency*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995).

Here, Plaintiff contends that Franciscan "procure[d] the interception of users' electronic communications for business purposes, including marketing and advertising," and has "received a benefit" by doing so. Compl. ⁋⁋ 110-111. Because that is the same improper conduct alleged in Plaintiff's ECPA and Intrusion on Seclusion claims, which, as described above, must be dismissed, Plaintiff's unjust enrichment claim also fails. *See, e.g., Ramirez v. LexisNexis Risk Sols.*, 729 F. Supp. 3d 838, 853 (N.D. Ill. 2024).

## CONCLUSION

WHEREFORE, for the reasons stated herein, Defendant Franciscan Alliance, Inc. respectfully requests that Court dismiss Plaintiff's Class Action Complaint in its entirety.

Dated: November 7, 2025

Respectfully submitted,

**FRANCISCAN ALLIANCE, INC.,** an Indiana Nonprofit Corporation, *Defendant*

By: */s/ Robert A. Anderson*
Robert A. Anderson

Robert A. Anderson (ARDC: 6301274)
Bernard T. Puglisi (ARDC: 6334032)
**KRIEG DEVAULT LLP**
200 S. Wacker Drive, Suite 600
Chicago, Illinois 60606
Telephone: (312) 651-2400
randerson@kdlegal.com
bpuglisi@kdlegal.com

**PAUL HASTINGS LLP**
Michelle A. Reed (*pro hac vice pending*)
2001 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (972) 936-7475
michellereed@paulhastings.com

Stephanie Balitzer (*pro hac vice pending*)
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: (213) 683-6153
stephaniebalitzer@paulhastings.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system and served by electronic mail on counsel below:

Kyle Shamberg
**CARROLL SHAMBERG LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
(872) 215-6205

*Counsel for Plaintiff*

**KRIEG DEVAULT LLP**

By: */s/ Robert A. Anderson*
Robert A. Anderson