**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| **VERONICA WATSON**, individually and on behalf of all others similarly situated, *Plaintiffs,*<br><br>v.<br><br>**FRANCISCAN ALLIANCE, INC.**, an Indiana nonprofit corporation,<br><br>*Defendants* | Case No. 1:25-cv-11043 |

**PLAINTIFF VERONICA WATSON'S RESPONSE IN OPPOSITION TO DEFENDANT FRANCISCAN ALLIANCE, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 2

I. PLAINTIFF HAS ESTABLISHED STANDING AND INJURY-IN-FACT ........ 2

A. Legal Standard ........................................................................................ 2

B. The Intentional and Unauthorized Interception and Disclosure of Plaintiff's Sensitive Private and Medical Information is a Concrete Harm………………… ........................................................................ 3

II. PLAINTIFF'S CLAIMS ARE WELL-PLED UNDER FED. R. CIV. P. 12(b)(6) 4

A. Legal Standard ........................................................................................ 4

B. Plaintiff States a Claim for Violation of the ECPA .................................... 5

C. Plaintiff States a Claim for Unjust Enrichment ....................................... 13

CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*A.D. v. Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090, 2024 WL 4119153 (N.D. Ill. 2024)........ 5, 6, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........ 4

*Castillo v. CostCo Wholesale Corp*., 2024 U.S. Dist. LEXIS 207197, 2024 WL 4785136 (W.D. Wash. 2024)........ 5

*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011)........ 13

*Desnick v. Am. Broadcasting Cos. Inc.*, 44 F.3d 1345 (7th Cir. 1995)........ 9

*Dixon v. Wash. & Jane Smith Cmty.-Beverly*, 2018 U.S. Dist. LEXIS 90344, 2018 WL 2445292 (N.D. Ill. May 31, 2018)........ 4

*Doe v. Genesis Health Sys*., 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)........ 9

*Donovan v. Eagleson*, 484 F. Supp. 3d 552 (N.D. Ill. 2020)........ 2

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)........ 4

*Florence v. Order Express, Inc*., 674 F. Supp. 3d 472 (N.D. Ill. 2023)........ 4

*Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, 2024 WL 4203263 (S.D.N.Y. 2024)........ 5

*Hannant v. Sarah D. Culbertson Mem'l Hosp*., No. 4:24-cv-04164-SLD-RLH, 2025 U.S. Dist. LEXIS 161412 (C.D. Ill. Aug. 20, 2025)........ 6

*In re Grp. Health Plan Litig*., 709 F. Supp. 3d 707 (D. Minn. 2023)........ 5

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012)........ 4

*Kane v. University of Rochester*, 2024 U.S. Dist. LEXIS 48515, 2024 WL 1178340 (W.D.N.Y. 2024)........ 5

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*")........ 7

*Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*")........ 7

*Kurowski v. Rush System for Health*, 2023 U.S. Dist. LEXIS 219895, 2023 WL 8544084 (N.D. Ill. 2023) ("*Kurowski III*")........ 5, 12

*Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003)........ 2

*Lueck v. Bureaus, Inc.*, 2021 U.S. Dist. LEXIS 178592, 2021 WL 4264368 (N.D. Ill. Sept. 20, 2021)........ 4

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)........ 2

*Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-cv-3132, 2025 U.S. Dist. LEXIS 60486 (N.D. Ill. Mar. 31, 2025) .......... 6, 10

*Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017 (7th Cir. 2013) .......... 5

*Pierce v. Zoetis, Inc.*, 818 F.3d 274 (7th Cir. 2016) .......... 4

*Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996) .......... 2

*Roper v. Rise Interactive Media & Analytics, LLC* ("*Roper I*"), No. 23 C 1836, 2023 U.S. Dist. LEXIS 201955, 2023 WL 7410641 (N.D. Ill. Nov. 9, 2023) .......... 4

*Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024) .......... 3, 6

*Smith*, 2024 U.S. Dist. LEXIS 119995, 2024 WL 3338941, at *7 .......... 5

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) .......... 2

*Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) .......... 5, 6, 9, 10

*Strong v. LifeStance Health Grp. Inc.*, 2025 U.S. Dist. LEXIS 14601, 2025 WL 317552 (D. Ariz. 2025) .......... 5

*Sweat v. Houston Methodist Hosp.*, 2024 U.S. Dist. LEXIS 108806, 2024 WL 3070184 (S.D. Tex. 2024) .......... 5

*Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407 (N.D. Ill. 2012) .......... 8

*Vesely v. Armslist LLC*, 762 F.3d 661 (7th Cir. 2014) .......... 5

**Statutes**

18 U.S.C. § 2511 .......... 2, 8

18 U.S.C. § 2520 .......... 8

42 U.S.C. § 1320d-6(a)(3) .......... 6

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 2, 3

Fed. R. Civ. P. 12(b)(6) .......... 4

Fed. R. Civ. P. 8(a)(2) .......... 4

## INTRODUCTION

This case arises from Franciscan Alliance, Inc.'s ("Defendant" or "Franciscan") systematic interception and disclosure of sensitive patient health information through tracking technology embedded in its website. Plaintiff Veronica Watson brings this class action on behalf of herself and all others whose private medical communications were intercepted without consent when they visited Franciscan's website, www.franciscanhealth.org (the "Website"), to search for physicians, research health conditions, and seek medical care. Complaint, ¶¶ 1, 82.[1] Franciscan deliberately implemented The Trade Desk tracking platform on its Website, enabling the real-time interception of highly sensitive information including: the names, specialties, and locations of physicians users sought; users' health conditions and medical concerns; search queries containing personal health information; and attempts to schedule appointments with healthcare providers. ¶¶ 4, 43-56. This information—combined with persistent tracking identifiers and IP addresses that allow The Trade Desk to identify *specific individuals*—was transmitted to third parties for commercial advertising purposes, all without patient knowledge or consent. ¶¶ 45-46, 65.

Plaintiff Watson, a patient of Franciscan for approximately five years, used the Website multiple times during the relevant period to search for OBGYN and internal medicine specialists and treatment information. ¶¶ 79-80. This information constitutes individually identifiable health information ("IIHI") under the Health Insurance Portability and Accountability Act ("HIPAA"). ¶ 38.

[1] Unless otherwise noted, all references to "¶_" in this response refer to Plaintiff's Class Action Complaint, ECF Doc. No. 1.

Plaintiff's experience is typical of the Class: all had their private medical communications intercepted through the same tracking technology, in violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 *et seq*, and principles of unjust enrichment.

Franciscan's Motion to Dismiss (cited herein as "MTD") should be denied, as Plaintiff has adequately alleged standing and has stated viable claims under federal and state law. Indeed, as discussed in detail below, numerous courts in this District have denied motions to dismiss under similar circumstances. Franciscan ignores *all* of these decisions in its motion.

## ARGUMENT

### I. PLAINTIFF HAS ESTABLISHED STANDING AND INJURY-IN-FACT

#### A. Legal Standard

"A motion under 12(b)(1) can. . . seek to dismiss a claim for lack of standing." *Donovan v. Eagleson*, 484 F. Supp. 3d 552, 556 (N.D. Ill. 2020) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996)). "In ruling on a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the complaint, drawing reasonable inferences in the plaintiffs' favor." *Id*. (citing *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)). "The plaintiffs bear the burden of establishing the required elements of standing." *Id*. at 556-57 (citing *Lee*, 330 F.3d at 468). Those elements are: (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

### B. The Intentional and Unauthorized Interception and Disclosure of Plaintiff's Sensitive Private and Medical Information is a Concrete Harm

Defendant argues that Plaintiff lacks standing under Fed. R. Civ. P. 12(b)(1) because "she has not alleged that *any* of her communications were intercepted by the Trade Desk." MTD at 5 (emphasis in original). This is simply not true. ¶ 69 ("***Plaintiff*** and Class members have suffered an invasion of their privacy through the unauthorized interception of their electronic communications and healthcare-related activities" and "[t]he interception of these communications violated ***Plaintiff's*** and Class members' reasonable expectation that their interactions with a healthcare provider would remain private"); ¶ 86 ("Plaintiff and Class members ***all*** visited the Website and had their electronic communications intercepted without their consent") (emphases added). These communications included sensitive personal medical information; in the case of Plaintiff, searches for treatment, locations, and providers of both obstetrics & gynecology and internal medicine and information related to this care. ¶ 80.

Plaintiff alleges that this information was intercepted and disclosed in exactly the same manner with respect to both her and the putative class. *See, e,g.,*¶ 49-56. This interception was not limited solely to IP addresses and other similar identifiers but to the content of the sensitive information itself, including the specific search terms and other information Plaintiff entered related to her OBGYN and internal care. *Id.*

These allegations are sufficient to establish concrete harm and, thus, standing. As Judge Daniel found in *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024):

> Here, the plaintiffs have adequately pleaded injury-in-fact based on the alleged disclosure of their medical information that, at this stage, is sufficient to confer standing to seek both damages and injunctive relief. The alleged disclosure of the plaintiffs' sensitive health information "has a close relationship to disclosure of private

> information, a common-law theory of harm." *Florence v. Order Express, Inc.*, 674 F. Supp. 3d 472, 479 (N.D. Ill. 2023) (*citing TransUnion*, 594 U.S. at 425); *see also Roper v. Rise Interactive Media & Analytics, LLC* ("*Roper I*"), No. 23 C 1836, 2023 U.S. Dist. LEXIS 201955, 2023 WL 7410641, at *3 (N.D. Ill. Nov. 9, 2023) ("Loss of privacy through the disclosure of private information is an intangible harm, but one that courts routinely recognize as concrete" given its close relationship to a traditionally recognized harm).

*Id.* at *9; *see also Lueck v. Bureaus, Inc.*, 2021 U.S. Dist. LEXIS 178592, 2021 WL 4264368, at *4 (N.D. Ill. Sept. 20, 2021) ("[c]ertainly, a disclosure of private information is a concrete, albeit intangible, harm") (citations omitted); *Dixon v. Wash. & Jane Smith Cmty.-Beverly*, 2018 U.S. Dist. LEXIS 90344, 2018 WL 2445292, at *10 (N.D. Ill. May 31, 2018) ("where privacy rights are concerned, the dissemination to a third party of information in which a person has a right to privacy is a sufficiently concrete injury for standing purposes.").

This Court should conclude the same.

## II. PLAINTIFF'S CLAIMS ARE WELL-PLED UNDER FED. R. CIV. P. 12(b)(6)

### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the motion to dismiss stage, the key inquiry is whether the complaint is "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A court must take "[t]he complaint's well-pleaded factual

allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

### B. Plaintiff States a Claim for Violation of the ECPA

"Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *11-12 (N.D. Ill. Feb. 21, 2025).[2] Similarly, "[c]ourts in this district have recognized that disclosing health information in violation of HIPAA can provide the predicate for a claim under the ECPA." *Id.*[3]

---

[2] *See, e.g., Kane v. University of Rochester*, 2024 U.S. Dist. LEXIS 48515, 2024 WL 1178340, at *7 (W.D.N.Y. 2024) ("This Court likewise concludes that Plaintiffs can invoke the tort-crime exception. Plaintiffs have alleged that Defendant configured the Pixel to collect and disclose, among other things, that a specific user booked an appointment with a specific healthcare provider and the search terms that the user entered to find that provider. . . . They have further alleged that Defendant disclosed this information to enhance its marketing efforts."); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023); *Strong v. LifeStance Health Grp. Inc.*, 2025 U.S. Dist. LEXIS 14601, 2025 WL 317552, at *5 (D. Ariz. 2025); *Castillo v. CostCo Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, 2024 WL 4785136, at *7 (W.D. Wash. 2024); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, 2024 WL 4203263, at *3-4 (S.D.N.Y. 2024); *Sweat v. Houston Methodist Hosp.*, 2024 U.S. Dist. LEXIS 108806, 2024 WL 3070184, at *4 (S.D. Tex. 2024).

[3] *See A.D. v. Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090, 2024 WL 4119153, at *3 (N.D. Ill. 2024) ("Accepting Plaintiffs' allegations as true, as the Court must at this stage, Aspen placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA] . . . . Plaintiffs plausibly allege that [Defendant] intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception."); *Kurowski v. Rush System for Health*, 2023 U.S. Dist. LEXIS 219895, 2023 WL 8544084, at *3 (N.D. Ill. 2023) ("*Kurowski III*") (holding that allegations of sharing medical information were "sufficient to invoke the HIPAA exception-to-the-party-exception" of the ECPA); *Smith*, 2024 U.S. Dist. LEXIS 119995, 2024 WL 3338941, at *7 ("Such [health] information qualifies as IIHI for purposes of HIPAA. . . . Further, the plaintiffs allege that LUMC's collection and disclosure of their personal health information was done knowingly and for purposes of financial gain — namely, [*12] to bolster profits via targeted marketing campaigns. . . . Taken as a whole, these allegations are sufficient to invoke HIPAA for purposes of the ECPA's crime-tort exception."); *Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-cv-3132, 2025 U.S. Dist. LEXIS

That is precisely what Plaintiff alleges occurred here when Defendant tracked, intercepted and disclosed Plaintiff's searches for OBGYN and internal medicine care and providers, which undoubtedly "relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual." ¶ 38 (quoting 42 U.S.C. § 1320d-6(a)(3)); *see also id.* ("Franciscan's conduct described in this Complaint is in violation of HIPAA"); *Hannant v. Sarah D. Culbertson Mem'l Hosp*., No. 4:24-cv-04164-SLD-RLH, 2025 U.S. Dist. LEXIS 161412, at *11 (C.D. Ill. Aug. 20, 2025) ("plaintiffs have succeeded in invoking the crime-tort exception via HIPAA violations by plausibly alleging that their patient status was captured in interceptions or disclosures showing that they had clicked 'the 'Schedule an Appointment' button or click[ed] the physician's phone number to schedule an appointment,'") (quoting *Kane*, 2024 WL 1178340, at *5-7); *Smith*, 2024 WL 3338941, at *17-18 (information regarding "personal health conditions and treatments . . . qualifies as IIHI for purposes of HIPAA").

Notably, Defendant does not address or even cite to *Aspen*, *Mayer*, *Smith*, or *Stein* in its motion. While of course not binding, these decisions, all from other judges in this District, are persuasive authority that Plaintiff's allegations state a claim under the ECPA. And while Defendant does rely on *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023)

---

60486, at *11 (N.D. Ill. Mar. 31, 2025) ("the Court concludes Plaintiffs have plausibly alleged that Duly intended to send their individually identifying health information to third-party Meta, in violation of HIPAA. Joining with other courts that reached the same conclusion on similar facts, the Court finds that Plaintiffs' allegations are sufficient to invoke the crime-tort carve-out to the ECPA's one-party consent exception").

.

("*Kurowski I*") and *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") in support of its ECPA arguments, it ignores the *third Kurowski* decision (*see* fn.2, above) wherein Judge Kennelly ultimately concluded that the plaintiff *did* state a claim for violation of the ECPA after finally alleging facts sufficient to show that IIHI was intercepted and disclosed, as Plaintiff has done here. *Compare Kurowski II*, 683 F. Supp. 3d at 843 ("Kurowski's allegations are far too vague to allow an inference to be drawn that Rush was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata . . . . Kurowski cannot reasonably expect to bring a lawsuit related to the invasion of her medical privacy and *completely evade revealing what it is that she alleges Rush disclosed to third parties*") (emphasis added) *with Kurowski III*, 2023 U.S. Dist. LEXIS 219895, at *7-8 ("Kurowski's proposed second amended complaint, however, includes additional factual allegations regarding the information she contends was transmitted to third parties with Rush's knowledge and at its instance. In particular, Kurowski [ ] alleges that Rush—via the previously-referenced tracking tools—transmitted the name and location of her personal physician, as well as her physician's specialty . . . . The Court concludes that count one of Kurowski's proposed second amended complaint, unlike the previous versions, plausibly states a claim for relief under the Wiretap Act").

Nevertheless, Franciscan raises four specific arguments in favor of dismissal of this count. ***First***, according to Defendant, Plaintiff purportedly alleges that it merely "procured a third-party interception" and there is no "secondary liability" under the ECPA. MTD at 7. This is simply semantics: Plaintiff alleges that *Defendant* installed the Trade Desk Tracker on its Website, that *Defendant* intercepted Plaintiff's sensitive communications through its employment of the Tracker, and that *Defendant* violated HIPAA through these intentional

actions. ¶¶ 33, 38, 98. This is no different from the cases cited above where the healthcare provider implemented tracking tools created by Google, Microsoft, or Facebook to intercept patient communications. Indeed, the one case from this District Defendant cites for this proposition does not even support its argument. *See* MTD at 7 (citing *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 (N.D. Ill. 2012); *but see id.* at 412 n.3 ("The procurer of an interception has indeed engaged in a violation of § 2511(1)(a), and may thus be sued by the person whose communication was intercepted. This interpretation also makes sense because the procurer of a violation - the one who brings about the violation - is not secondarily liable as that term is usually understood; the procurer is the *principal*, not the merely secondary actor") (emphasis in original).

But *even if* Franciscan did not itself intercept Plaintiff's communications (it did), and *even if* the ECPA did not permit a right of action against an entity that "procures" an interception (it does), Plaintiff specifically alleges that Franciscan not only intercepted but "disclosed" her IIHI to third-party Trade Desk. ¶¶ 1 (noting "Franciscan's systematic interception ***and disclosure*** of patients' and website visitors' sensitive personal health information and electronic communications to third parties"); 38 ("Franciscan's conduct described in this Complaint is in violation of HIPAA, which imposes criminal penalties for knowingly ***disclosing*** [IIHI] to third parties") (emphases added). Thus, even under Defendant's misinterpretation of the law and strained reading of what Plaintiff alleges here, she states a claim against Franciscan. 28 U.S.C. § 2520(a) ("any person whose wire, oral, or electronic communication is intercepted, ***disclosed***, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, ***which engaged in that violation***") (emphases added).

***Second***, Franciscan argues that it was a party and intended recipient of Plaintiff's communications, MTD at 8, but this is immaterial in light of the crime-tort exception, and all of Franciscan's arguments for why the crime-tort exception should not apply are misplaced.

*One*, Plaintiff has in fact alleged that IIHI was intercepted and disclosed – she did not merely browse Defendant's Website but input information directly related to her own medical conditions and care as a patient, ¶ 79-80, and this personal information – not just a device identifier or IP address or general URL – was intercepted and disclosed, ¶¶ 49-56.

*Two*, Plaintiff alleges the necessary intent for the exception to apply. Again, Franciscan relies solely on a Central District of Illinois case[4] for this proposition and ignores the decisions from this District that have found the opposite. As Judge Seeger put it, "[t]o be sure, some courts have concluded that the crime-tort exception does not apply when the underlying motivation is financial, not criminal or tortious." *Stein*, 2025 U.S. Dist. LEXIS 31273, at *12-13 (collecting cases). But "[t]hat approach seems difficult to square with the statutory text," as "[t]he language of the statute gives no hint that conduct falls outside the reach of the statute if a person acted based on financial motivations." *Id.* at *14; *see also id.* at *16 ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money").

[4] The case, *Doe v. Genesis Health Sys*., 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025), itself relied on the Seventh Circuit's ruling in *Desnick v. Am. Broadcasting Cos. Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) for its conclusion that the defendant there did not violate HIPAA because the trackers at issue were used for "marketing and advertising purposes." *Doe*, at *9. Judge Perry spends a substantial portion of her *Mayer* ruling explaining why *Desnick* should not be read in the way *Doe* interpreted it, nor in the way Franciscan claims. 2025 U.S. Dist. LEXIS 60486, at *6-8.

Judge Perry rejected the same argument in *Mayer*, 2025 U.S. Dist. LEXIS 60486, at *10-11 ("based on the facts as currently alleged, Duly shared confidential health information with Meta purposefully. That Duly may have intended to make money from sharing this information – either through benefits from Meta or increased business for Duly due to better-targeted advertisements – is immaterial (at least at this stage of proceedings). Protected health information has monetary value; it is no defense to a HIPAA charge that one violated HIPAA only because they wanted to make money by doing so"). While Franciscan may have had a monetary motive to disclose Plaintiff's and class members' IIHI in violation of HIPAA, that does not mean it has free reign to do so; any other conclusion would allow a defendant a 'get-out-of-jail-free" card any time it violated HIPAA, so long as it was trying to make money by doing so. *Aspen*, 2024 U.S. Dist. LEXIS 161090, at *8-9 ("Aspen claims that its only purpose was to improve its marketing and boost its revenues, but this purpose cannot be detached from the reality that Aspen achieved this improved marketing and revenue boost by disclosing Plaintiff's IIHI").

*Three*, Plaintiff has indeed alleged "tortious or criminal conduct *independent* of the placement of the pixels," MTD at 11 (emphasis in original), namely the violation of HIPAA. *Stein*, 2025 U.S. Dist. LEXIS 31273, at *10-11 ("A disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA. That's enough to conclude that the crime-tort exception applies. That is, the crime-tort exception to the one-party consent rule applies, because a violation of HIPPA is a crime or tort"). Defendant's argument rests on the presumption that it did not violate HIPAA but, as explained above (and, more importantly, as alleged in the Complaint), it did, and therefore Plaintiff has established that the crime-tort exception applies. *Aspen*, 2024 WL 4119153, at *3 ("Accepting Plaintiffs' allegations as true, as the Court must at

this stage, Aspen placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA] . . . . Plaintiffs plausibly allege that [Defendant] intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception").

***Third***, Franciscan claims that Plaintiff fails to allege that any identifying information was disclosed, MTD at 11-12. To the contrary, Plaintiff alleges that "[t]he information intercepted through this [Trade Desk] tracker includes electronic communications between the visitor and Franciscan regarding the visitor's healthcare interests, treatment-seeking behavior, and medical preferences," which "[w]hen combined with the TDID cookie and a user's IP address . . . allows The Trade Desk to ***identify individual users*** and associate sensitive health information with their digital profiles." ¶ 45; *see also* ¶¶ 46 ("The TDID, particularly when combined with users' IP addresses, creates a multi-layered digital fingerprint that allows The Trade Desk to track individuals across multiple devices and browsing sessions with exceptional precision. This combination enables The Trade Desk to: (a) ***identify specific individuals even when they move between different locations; (b) distinguish between multiple users of the same household or workplace network***; (c) connect healthcare inquiries to specific individuals' broader online activities; and (d) build comprehensive profiles that include both health interests and geographic patterns of behavior"); 25 ("The TDID functions as far more than a simple session identifier. It enables The Trade Desk to: (a) uniquely identify visitors across multiple websites and devices; (b) track visitor behavior across domains through persistent cookies; (c) create comprehensive user profiles based on browsing behavior; and (d) enable targeted advertising based on users' interests and online activities"); 65 ("The Trade Desk Tracker intercepts individually identifiable

information, such as persistent TDID cookies and IP addresses, ***which can be linked to specific individuals and their health inquiries***") (emphases added).

Thus, while an IP address standing alone may not constitute IIHI (Plaintiff is willing to assume so for present purposes at least), the Complaint alleges that when combined with other unique identifiers as well as the specific medical- and health-related information Plaintiff and class members input into the Website that information *does* constitute IIHI, as numerous other courts have concluded. *E.g. Kurowski III*, 2023 U.S. Dist. LEXIS 219895, at *8.

***Fourth***, and finally, Defendant argues that Plaintiff's ECPA claim should be dismissed because Plaintiff fails to allege that any of her own communications were intercepted, MTD at 12. Again, Defendant ignores the actual allegations in the Complaint. ¶ 69 ("***Plaintiff*** and Class members have suffered an invasion of their privacy through the unauthorized interception of their electronic communications and healthcare-related activities" and "[t]he interception of these communications violated ***Plaintiff's*** and Class members' reasonable expectation that their interactions with a healthcare provider would remain private"); ¶ 86 ("Plaintiff and Class members ***all*** visited the Website and had their electronic communications intercepted without their consent") (emphases added). Plaintiff alleges that these interceptions and disclosures included her searches for locations, providers, and information related to OBGYN and internal medicine care. ¶¶ 79-80. Accordingly, Plaintiff has adequately alleged that her communications with the Website were intercepted and disclosed in violation of the ECPA.

In the end, Plaintiff respectfully submits that this Court should reach a conclusion similar to Judges Kennelly, Seeger, Perry, Daniel and Kendall on this issue and deny Defendant's motion to dismiss her ECPA claim.

### C. Plaintiff States a Claim for Unjust Enrichment[5]

Because Plaintiff has stated a claim for violation of the ECPA her unjust enrichment claim survives as well. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.").

## CONCLUSION

For the reasons set forth above, Plaintiff Veronica Watson respectfully requests that this Court deny Defendant Franciscan Alliance, Inc.'s Motion to Dismiss in its entirety as to Counts I and III; Plaintiff agrees to voluntarily dismiss Count II without prejudice.

Dated: November 26, 2025

Respectfully submitted,

*/s/ Kyle Shamberg*
Kyle Shamberg
**CARROLL SHAMBERG LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
(872) 215-6205

***Attorneys for Plaintiff and the Putative Class***

[5] Plaintiff agrees to voluntarily dismiss Count II of her Complaint for Invasion of Privacy – Intrusion Upon Seclusion without prejudice.

## **CERTIFICATE OF SERVICE**

The undersigned hereby confirms that the foregoing document was electronically filed with the United States District Court for the Northern District of Illinois and is being served on all parties via the Court's CM/ECF System.

*/s/ Kyle Shamberg*
Kyle Shamberg