IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERONICA WATSON, individually and on behalf of others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>FRANCISCAN ALLIANCE, INC., an Indiana Nonprofit Corporation,<br><br>Defendant. | Case No. 1:25-cv-11043<br><br>HON. JOAN H. LEFKOW |

**DEFENDANT FRANCISCAN ALLIANCE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

ARGUMENT ..... 3

I. The Complaint Must be Dismissed Under Rule 12(b)(1) Because Plaintiff Lacks Article III Standing ..... 3

II. Plaintiff's Claims Must be Dismissed Under Rule 12(b)(6) ..... 4

- A. Plaintiff's ECPA Claim Must Be Dismissed ..... 4
  - 1. Plaintiff Relies on an Unsound "Procurement" Theory ..... 5
  - 2. The ECPA's Crime-Tort Exception Does Not Apply ..... 6
- B. Plaintiff Agrees that the Intrusion Upon Seclusion Claim Must be Dismissed ..... 13
- C. Plaintiff's Unjust Enrichment Claim Must Be Dismissed ..... 13
- D. The Court Should Dismiss Plaintiff's Complaint with Prejudice ..... 14

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................7, 8, 11, 12

*B.N. v. Oregon Reprod. Med., LLC*,
2025 WL 3165965 (D. Or. Nov. 12, 2025)....................10

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ....................2

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................14

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................10

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ....................2

*Dodd v. Jones*,
623 F.3d 563 (8th Cir. 2010) ....................4

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................8

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................9

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ....................10

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................9

*Hannant v. Sarah D. Culbertson Mem'l Hosp.*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)....................3, 4, 9, 13

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ....................5

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y., Mar. 19, 2024)....................10

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ....................6

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)....................11, 12

*Mayer v. Midwest Physician Admin. Servs., LLC*,
2025 WL 963779 (N.D. Ill. Mar. 31, 2025)....................8, 11

*Peavy v. WFAA–TV, Inc.*,
221 F.3d 158 (5th Cir. 2000), *cert. denied*, 532 U.S. 1051 (2001)....................6

*Peters v. Mundelein Consol. High Sch. Dist. No. 120*,
2022 WL 393572 (N.D. Ill. Feb. 9, 2022) ....................6

*In re Samsung Data Sec. Breach Litig.*,
761 F. Supp. 3d 781 (D.N.J. 2025) ....................3

*Shefts v. Petrakis*,
954 F. Supp. 2d 769 (C.D. Ill. 2013) ....................5

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ....................4

*Arnold Stein et al. v. Edward-Elmhurst Health*,
2024 WL 4817077 (N.D. Ill. Feb. 20, 2024) ....................7

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ....................6

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill., Feb. 21, 2025) ....................7, 11

*In re Toys R Us, Inc. Priv. Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)....................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................4

*U.S. v. Jiau*,
734 F.3d 147 (2d Cir. 2013)....................9

*Valentine v. WideOpen W. Fin., LLC*,
288 F.R.D. 407 (N.D. Ill. 2012)....................5

*Williams v. TMC Health*,
2024 WL 4364150 (D. Ariz. Sept. 30, 2024)....................10

**Statutes**

42 U.S.C. § 1320d-6 ....................................................................................................8

Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* ..................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) .......................................................................1, 3

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1, 4

## INTRODUCTION

All of Plaintiff's claims should be dismissed for the reasons argued in Franciscan's Motion to Dismiss. Plaintiff's central theory in this case is that Franciscan enabled the Trade Desk's interception of her health-related communications with Franciscan's Website in violation of the Federal Wiretap Act, 18 U.S.C. § 2511 ("ECPA"). Plaintiff secondarily claims an ECPA violation premised on Franciscan's alleged disclosure or interception of Plaintiff's communications. Both theories fail under FRCP 12(b)(6). That's because the ECPA is expressly a one-party consent statute and on its face does not impose civil liability for aiding or abetting an interception. The Complaint suffers from another foundational defect too: it fails to articulate how the Trade Desk could connect Plaintiff's identity and browsing activity. Thus, the Complaint fails to allege sufficient facts to establish Plaintiff's concrete and particularized injury for purposes of her Article III standing. And accordingly, Plaintiff's Complaint must be dismissed under FRCP 12(b)(1) as well.

Plaintiff's Opposition fails to refute these arguments. It does not offer any support for Plaintiff's aiding and abetting theory. Instead, Plaintiff dismisses her repeated allegations that Franciscan "procured" the interception of Website browsing information as mere "semantics" (Opp. at 7) and denies her reliance on that theory. *But see* Compl. ¶¶ 3, 47, 48, 57, 60, 62, 63, 68, 90, 96, 97, 100. Even if Plaintiff could rewrite her Complaint through her Opposition (which she cannot) it would not help. The Complaint is clear that Franciscan was the intended recipient of Plaintiff's communications, and as the intended party recipient, it cannot "intercept" its own communications; however, it can consent to disclosures to third parties.

The Opposition's resort to the crime-tort exception is also unsupported. The Complaint does not allege facts to support a criminal or tortious purpose. Unlike the complaints in the

Opposition's cited cases, Plaintiff's Complaint never alleges that Franciscan knowingly or intentionally violated HIPAA. And though the Opposition argues that disclosure of Plaintiff's search for providers or conditions on Franciscan's public-facing Website establishes a HIPAA violation (and thus an independently wrongful act), Plaintiff does not point to *a single* factually analogous case supporting her argument that these searches reveal her patient status or treatment information. Nor does she cite any cases where IP addresses and anonymous user IDs sufficed as identifying information. Her factual allegations simply do not come close to showing that her protected health information ("PHI") or individually identifiable health information ("IIHI") were disclosed. And as such the crime-tort exception does not rescue Plaintiff's ECPA claim.

With respect to Franciscan's standing argument, Plaintiff's Opposition leans on the class's group pleadings and relies on pure legal conclusions to establish her Article III standing. But the law is clear that this is not enough to satisfy Plaintiff's burden. Named plaintiffs "who represent a class must allege and show that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 809-10 (N.D. Ill. 2017) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig*., 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.").

Finally, Plaintiff's Opposition concedes that the Intrusion Upon Seclusion claim must be dismissed and admits that the Unjust Enrichment claim cannot survive on its own.

For all of these reasons, Franciscan respectfully requests that the Court grant its Motion to Dismiss in full and without leave to amend.

# ARGUMENT

## I. The Complaint Must be Dismissed Under Rule 12(b)(1) Because Plaintiff Lacks Article III Standing

Plaintiff's Complaint fails in its entirety because Plaintiff's allegations are vague and insufficient to show that she has suffered an injury-in-fact. Specifically, Plaintiff fails to plausibly allege her own information was intercepted; rather, Plaintiff's allegations are too vague to establish any particularized harm that affected her in an individual way. The Opposition fails to explain how the Complaint can overcome these defects.

First, though the Opposition contends that the Complaint is sufficient (Opp. at 3), the Complaint does not allege facts showing that the Trade Desk specifically intercepted Plaintiff's communications. Rather, the Complaint alleges that Plaintiff "used Franciscan's Website multiple times" over the last five years and that at "various times" she accessed the Website to search for "provider locations, doctors and medical professionals," "to search for information on treatments, and to receive health information." Compl. ¶ 80. *Even if* Plaintiff's allegations were clearer, general information available on a public website and vague assertions regarding the diminution of value of her data are not injuries recognized under common law. *See Hannant v. Sarah D. Culbertson Mem'l Hosp.*, 2025 WL 2413894, at *16 (C.D. Ill. Aug. 20, 2025) (dismissing ECPA claim based on conclusory allegations that defendant disclosed plaintiff's "status as a patient"); *see* Compl. ¶ 70 (describing the injury of the class as "loss of data value").[1]

Second and relatedly, the Opposition does not point to colorable allegations explaining how her identity was disclosed to the Trade Desk. Instead, the Opposition describes allegations regarding the interception of Plaintiff's "IP addresses and other similar identifiers." *See* Opp. at 3

---

[1] "[C]ourts have rejected allegations that the diminution in value of personal information can support standing." *In re Samsung Data Sec. Breach Litig.*, 761 F. Supp. 3d 781, 799 (D.N.J. 2025).

(alleging that Plaintiff's information was "intercepted and disclosed in exactly the same manner with respect to her and the putative class"), *citing* Compl. ¶¶ 49-56. However, the Opposition's citations to the Complaint say nothing about Plaintiff specifically, and instead describe generic users' activity on the Website. Plaintiff cannot use hypothetical users' activity to establish her own standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (a plaintiff must have "standing for each claim that they press and for each form of relief that they seek"); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (An injury in fact is one that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."). The use of HIPAA regulations to buttress Article III standing for non-HIPAA claims is shaky to begin with, let alone here where allegedly intercepted information does not reveal IIHI. *See Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action.").

As a last resort, Plaintiff points to boilerplate group pleadings to show that she has met her burden to establish standing. *See* Opp. at 3 (citing Compl. ¶¶ 69, 86, 80). This tactic fails too. Plaintiff cannot lump herself into the class's bare recitations of the elements to establish standing. *Hannant*, 2025 WL 2413894, at *5 ("an allegation that patient status was disclosed, standing alone, is closer to a legal conclusion than a factual allegation.").

Because Plaintiff has not plausibly alleged unlawful disclosure of her personal health conditions or treatments (or any concrete harm), she fails to meet her burden to establish the elements of Article III standing. This case should be dismissed.

## II. <u>Plaintiff's Claims Must be Dismissed Under Rule 12(b)(6)</u>

### A. Plaintiff's ECPA Claim Must Be Dismissed

Plaintiff's ECPA claim must be dismissed because Franciscan's consent as a party to the communications presumably bars that claim. *See* 18 U.S.C. § 2511(2)(d). Indeed, it is well established in this Circuit that websites, as recipients of online communications, are parties who

may consent to alleged "interceptions." *See, e.g.*, *Hartley v. Univ. of Chicago Med. Ctr*., 2023 WL 7386060, at *1 (N.D. Ill. Nov. 8, 2023). The Opposition fails to explain how Franciscan, as the intended recipient of these communications, can be liable for "unlawfully" intercepting Plaintiff's communications. *See* Opp. at 7 (contending that Franciscan intercepted Plaintiff's communications).

As such, Plaintiff relies on two alternative grounds for her ECPA claim. First, she leans on an unsound secondary liability theory, and second, she looks to the inapplicable crime-tort exception. Both theories fall flat.

1. <u>Plaintiff Relies on an Unsound "Procurement" Theory</u>

As a matter of law, Plaintiff's Complaint cannot evade the "party" exception through her aiding and abetting theory. Nevertheless, the Opposition dismisses any defects in the Complaint's reliance on a secondary liability theory as mere "semantics." Opp. at 7. Not so. Plaintiff clearly rests her ECPA claim on allegations that Franciscan procured (i.e. aided and abetted) the Trade Desk's interceptions. *See* Compl. ¶¶ 3, 47, 48, 57, 60, 62, 63, 68, 90, 96, 97, 100. And every argument the Opposition asserts in defense of this theory is similarly unavailing.

For one, Plaintiff's assertion that *Valentine v. WideOpen West Finance* does not support Franciscan's position is feeble at best. *See* Opp. at 8. While in a footnote that court noted the possibility that a "procurer of an interception" incurs civil liability, the court's limited holding is that secondary liability theories are not viable. *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 n.3 (N.D. Ill. 2012). Moreover, Plaintiff cites *no authorities* holding her procurement theory of liability is viable in a civil ECPA action. Plaintiff's failure to cite authorities is not surprising, as courts have *repeatedly*, across multiple circuits, declined to extend civil liability beyond the statute's plain text. *See Shefts v. Petrakis,* 954 F. Supp. 2d 769, 776 (C.D. Ill. 2013) ("one who merely "procures" the interception of communications is not civilly liable under the

ECPA"); *Peavy v. WFAA–TV, Inc.,* 221 F.3d 158, 168-169 (5th Cir. 2000), *cert. denied*, 532 U.S. 1051 (2001) (viewed in its full context, the phrase "that violation" plainly incorporates the description set forth in the first clause, meaning that it "refers only to illegal interception disclosure, or use, and not to procuring interception by another."); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247 (10th Cir. 2012); *see Peters v. Mundelein Consol. High Sch. Dist. No. 120*, 2022 WL 393572, at *11 (N.D. Ill. Feb. 9, 2022) ("Plaintiff has not stated a claim against McCreery either. Under the Wiretap Act's civil remedy, McCreery is liable if he 'intercepted, disclosed, or intentionally used [communications] in violation of this chapter.'"); *Smith v. Rack Room Shoes, Inc.,* 2025 WL 1085169, at *7 (N.D. Cal. Apr. 4, 2025) ("Plaintiffs' claim that Rack Room violated the Wiretap Act when it 'procured' Meta and Attentive to intercept communication fails as a matter of law"); *In re Toys R Us, Inc. Priv. Litig.,* 2001 WL 34517252, at *6 (N.D. Cal. Oct. 9, 2001) (dismissing Wiretap Act claim as to Toys R Us regarding allegations of a third-party code that intercepted information from visitors to Toys R Us website). Indeed, the ECPA is clear on its face. That is, the civil cause of action (section 2520(a)) omits the "procurement" language included in the criminal provision (section 2511). *See* 18 U.S.C. §§ 2511, 2520(a). Plaintiff offers no explanation or interpretation of how the ECPA's text supports her claim. *See* Opp. at 7-8. Plaintiff's secondary liability theory fails as a matter of law, and her ECPA claim should be dismissed.

2. The ECPA's Crime-Tort Exception Does Not Apply

The Opposition alternatively relies upon a narrow carve-out to the ECPA's presumption against liability for a party to a communication—the crime-tort exception; however, the Opposition fails to overcome several problems with applying this exception. *See* Opp. at 9-12.

For one, although the Opposition points to cases where plaintiffs alleged defendants' intent to violate HIPAA for commercial gain, these allegations are unlike Plaintiff's vague and

conclusory assertions regarding Franciscan's intent. Opp. at 9-10 (citing *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *2-4 (N.D. Ill., Feb. 21, 2025); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024); and *Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 WL 963779, at *1 (N.D. Ill. Mar. 31, 2025)).

In *Stein*, plaintiff alleged that defendant Edward-Elmhurst "knowingly and intentionally disclosed Plaintiffs' PHI to Facebook," "fail[ed] to remove or disengage technology that was known and designed to share Users' Private Information," "had a purpose that was…designed to violate state constitutional and statutory provisions including…[in] violation of HIPAA," and "specifically used the Pixels and other tracking codes to track and utilize Plaintiffs' and Class members' Private Information for its own financial benefit." Amended Complaint, *Arnold Stein and Diane Miller, Individually, and on behalf of all others Similarly Situated v. Edward-Elmhurst Health*, 2024 WL 4817077 (N.D. Ill. Feb. 20, 2024), Dkt. No. 31 ¶¶ 178, 351, 354.

The allegations in *Aspen* are similar; there, plaintiff alleged that defendant Aspen "knowingly transmits this [PII and PHI] data and does so for the purpose of financial gain," that "Aspen's overall intent and purpose in acquiring Users' personal health data was to increase its ability to market and retarget its Users, thereby increasing its profit while violating HIPAA, state and federal statutes, and common law," that "Defendant specifically used the Pixels and other tracking codes to track and utilize Plaintiffs' and Class members' Private Information for its own financial benefit," and that "Aspen's purpose was tortious and designed to violate federal and state law, including as described above, a knowing intrusion into a private place, conversation or matter that would be highly offensive to a reasonable person." Second Amended Complaint, *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. Oct. 21, 2024), Dkt. No. 61 ¶¶ 25, 420, 425, 429.

And in *Mayer*, plaintiff alleged that defendant Midwest Physician Administrative Services "knowingly and intentionally disclosed Plaintiffs' PHI to Meta," "in disclosing the content of Plaintiffs' and the Class Members' communications relating to patient portals, treatments, conditions, and appointments, Duly had a purpose that was tortious, criminal and designed to violate state constitutional and statutory provisions including …a violation of HIPAA, particularly 42 U.S.C. § 1320d-6," "defendant specifically used the Pixels and other tracking codes to track and utilize Plaintiffs' and Class Members' Private Information for its own financial benefit," and "Defendant's overall intent and purpose in acquiring Users' personal health data was to increase its ability to market and retarget its Users, thereby increasing its profit while violating HIPAA, state and federal statutes and common law." Amended Complaint, *Mayer v. Midwest Physician Admin. Servs., LLC*, No. 1:23-cv-3132 (N.D. Ill. Mar. 1, 2024), Dkt. No. 34 ¶¶ 29, 127, 166, 286, 329.

Here, conversely, the Opposition does not show where Plaintiff pleads that Franciscan *knew* or *intended* to violate HIPAA. Rather, Plaintiff's allegations revolve around the deliberate and knowing implementation of the Trade Desk Pixel. Compl. ¶ 3 ("Franciscan has knowingly implemented third-party tracking technology on its Website, including The Trade Desk tracking platform"); *see id.* ¶ 43 ("Franciscan has deliberately implemented The Trade Desk Tracker in the source code of its Website"); *id.* ¶ 58 ("Franciscan made the affirmative decision to implement The Trade Desk Tracker on its Website"); *see also id.* ¶¶ 59; 96.[2] Thus, Plaintiff does not plausibly allege the intentional disclosure of IIHI or that disclosing PHII in violation of HIPAA was

[2] Plaintiff's most specific allegation (which is still exceedingly vague) is that Franciscan "intended to share and monetize its patients' IIHI" but nevertheless these allegations do not make clear that Franciscan implemented trackers knowing that IIHI would be disclosed or for the purpose of committing a violation of HIPAA. *See Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025).

Franciscan's purpose. *Cf. Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (dismissing Wiretap Act claim because a "[v]iolation of HIPAA was not the purpose of the alleged interception."). For this reason alone, Plaintiff's allegations do not satisfy the narrow crime-tort exception. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (court declined to apply the crime-tort carve-out because plaintiffs failed to allege that the offender's "'primary motivation' or a 'determining factor' in its actions [was] to injure plaintiffs tortiously"); *U.S. v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013).

Second, Plaintiff fails to plausibly allege any violation of HIPAA occurred here. As alleged, the Complaint is both incredibly vague and entails distinguishable tracking technologies, involving different metadata, such that it fails to plausibly show that Plaintiff's identity was connected to her purported health-related information. In fact, her Opposition admits that "an IP address standing alone may not constitute IIHI." Opp. at 12. And while Plaintiff concludes that an IP address and anonymized Trade Desk ID can "track specific individuals" or identify them, there is insufficient factual support to show these data can be linked to the *name* of a person, rather than just an anonymous individual's profile. *See* Opp. at 11; *see* Compl. ¶¶ 24-33 ("IP addresses reveal the geographic location of internet users" and the Trade Desk ID is a "unique alphanumeric string" that "enable[s] targeted advertising"); *see id.* ¶ 33 (concluding that "Franciscan has implemented The Trade Desk Tracker on its Website, enabling the interception of sensitive health information from Website visitors along with their IP addresses and persistent tracking identifiers"). Thus, Plaintiff's allegations fail to support an inference that this data can be reasonably be used to identify a specific individual. *Cf. Hannant*, 2025 WL 2413894, at *4.

Third and relatedly, the Complaint fails to plausibly show a HIPAA violation occurred where Plaintiff simply conducted research on a public website. Plaintiff's Opposition does not

refute that her claims boil down to an allegation that "searches for OBGYN and internal medicine providers" were intercepted. *See* Opp. at 12; *see also* Compl. ¶ 80. (Likewise, Plaintiff alleges that the class's injury arises from "searches for medical specialists, searches for treatments, and inquiries about medical conditions." Compl. ¶ 69.) And Plaintiff does not argue that her Complaint shows she contacted any specific physicians, obtained any of her medical records, or logged into a patient portal. *See* Opp. at 12; *cf. Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (holding plaintiffs' allegations "that they used www.sharp.com, a public website," to research doctors, look for providers, and search for medical specialists did not involve PHI because the information did not relate specifically to plaintiffs' health and was, instead, general health information accessible to the public at large). Thus, it is not reasonable to infer that Plaintiff's activities conveyed her personal medical history (as opposed to another person's entirely). *See B.N. v. Oregon Reprod. Med., LLC,* 2025 WL 3165965, at *3 (D. Or. Nov. 12, 2025) ("Plaintiff has not pleaded sufficient facts to allege that Defendant transmitted her PHI to LinkedIn and therefore, does not adequately allege that Defendant violated HIPAA, and the crime-tort exception does not apply").

As noted, these allegations are vastly different from those in the cases Plaintiff cites to defend her reliance on the crime-tort exception.[3] Tellingly, the Opposition does not cite a single case that is both factually on-point and survived a motion to dismiss. *See* Opp. at 6-12. For instance, *Kane v. University of Rochester* is unhelpful to Plaintiff because *Kane* involved different facts. Opp. at 5. There, the allegedly disclosed information included patient status and clicks on

[3] Navigating to a page with methods for scheduling an appointment or to log into a patient portal are insufficient as they do not demonstrate that the individual then availed themselves of those methods. *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, at *3 (S.D. Ind. Sept. 24, 2024); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Ariz. Sept. 30, 2024).

a "schedule an appointment" button, which also disclosed the specific provider, the provider's specialty, and the treatment sought. *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *2 (W.D.N.Y. Mar. 19, 2024). This is plainly distinguishable from Plaintiff's mere browsing of a public-facing website to research a host of different providers, as there is no nexus to her patient treatment from browsing Franciscan's website. For instance, the Complaint does not plead that the webpage tracked what physician or other provider she scheduled an appointment with or any treatment details.

The Opposition also points to *Stein*, *Aspen*, *Mayer*, and *Kurowski III*. Opp. at 6-7. The complaint in *Stein v. Edward-Elmhurst Health* stated distinct allegations about the identifying and health information disclosed through the implementation of pixel technology. *Stein*, 2025 WL 580556, at *2. Specifically, plaintiff in *Stein* alleged that they used the website to book medical appointments and defendant's MyChart portal to communicate with doctors, access test results, and manage prescriptions and appointments, among other things. *Id*. at *2. The plaintiff there also alleged that Meta's tracking pixel transmitted every click, keystroke, and detail about their medical treatment by tracking their activities on the MyChart portal and website, along with the person's unique Facebook ID—which could be used to "instantly associate someone's personal health data with a specific user." *Id.*[4] Facebook IDs are not like IP addresses—which, as alleged, simply show a general geographic area. *See* Compl. ¶¶ 29-31. Nor are Trade Desk IDs like Facebook IDs, as they, by Plaintiff's admission, cannot connect to a specific person standing alone. *Id.* ¶¶ 25-28.

*Aspen* is likewise distinguishable from this case. *See* Opp. at 10. There, the complaint alleged that the Meta Pixel and other tracking technologies disclosed (1) users' unique Facebook

[4] The allegations in *Mayer* were nearly identical. *Mayer*, 2025 WL 963779, at *3.

IDs "so that there is no anonymity in that Facebook (and/or any third parties who access the information) are able to associate such personal health data with the specific User in question" alongside (2) the users' appointment scheduling and stated reason for the visit and (3) PII, including names, email addresses, phone numbers, and other unique personal identifiers. Second Amended Complaint, *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. Oct. 21, 2024), Dkt. No. 61 ¶¶ 14, 146-156. The allegations in *Aspen* regarding disclosure of appointment request forms and PII are unlike Plaintiff's allegations about her browsing on Franciscan's public website.

Plaintiff tries to distinguish her complaint from *Kurowski I and II* and instead compares it to *Kurowski III.* Opp. at 6-7. But *Kurowski III* is procedurally and factually distinguishable. As a threshold matter, it is procedurally distinct because the ruling at issue evaluated Kurowski's motion for leave to amend, not a motion to dismiss. *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *1 (N.D. Ill. Dec. 11, 2023) ("Kurowski III"). Moreover, Kurowski's factual allegations were very different from Plaintiff's. *Id.* Specifically, Kurowski alleged that as a Rush patient, she used and continued to use defendant Rush's web properties to obtain information related to her health care, including through Rush's patient-only, password protected portal (MyChart), which Kurowski alleged she used "to exchange with her health care providers communications about appointments, test results, prescription refills, and other treatment." *Id.* at *1. According to Kurowski, the MyChart system "secretly deploy[ed] 'custom analytics scripts'—for example, Google Analytics"—that allowed for contemporaneous unauthorized interception and transmission of personally identifiable patient data." *Id.* Thus, there, Kurowski contended that the actual content of a patients' communications that occur within the MyChart portal were being transmitted to at least Google. *Id.* By contrast, Plaintiff's Complaint does not allege any of

these relevant facts, or anything close to it. Rather, Plaintiff, alleges the mere potential interception of some metadata and browsing information, not PHII.

Finally, Plaintiff cites *Hannant v. Sarah D. Culbertson Memorial Hospital*. Opp. at 6-7. However, *Hannant* supports Franciscan's Motion to Dismiss. *Hannant* dismissed the plaintiff's ECPA claim, reasoning that "[m]ore factual detail [was] required to find that Plaintiff has plausibly alleged that her IIHI, as opposed to a potential class member's IIHI, was disclosed." *Hannant*, 2025 WL 2413894, at *5-6. There, as here plaintiff provided "no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal." *Id.* Moreover, the Court recognized there that even stronger allegations would not suffice: "courts have found that even transmissions showing navigation to a page containing methods for scheduling an appointment or logging into a hospital's patient portal are insufficient without further information demonstrating that the individual availed herself of those methods." *Id.* at *4. Thus, even if the Complaint colorably alleged that Plaintiff's "attempts to schedule appointments" were intercepted (which she does not), the exception still would not apply. *Cf.* Opp. at 1.

At bottom, Plaintiff's Opposition does not (and cannot) show that the crime-tort exception rescues Plaintiff's ECPA claim. And as a result, Plaintiff's claim should be dismissed.

**B. Plaintiff Agrees that the Intrusion Upon Seclusion Claim Must be Dismissed**

Plaintiff agrees to voluntarily dismiss her Intrusion Upon Seclusion Claim. Opp. at 13. As such, Count II should be dismissed.

**C. Plaintiff's Unjust Enrichment Claim Must Be Dismissed**

Although Plaintiff contends that the unjust enrichment claim can be maintained, she fails to refute the derivative nature of the claim. Therefore, Plaintiff concedes that if her other claims fail, her unjust enrichment claim must also be dismissed.

Indeed, Plaintiff solely cites one case in her one-sentence defense of this claim—*Cleary v. Philip Morris Inc.*, 656 F.3d 511 (7th Cir. 2011). *See* Opp. at 13. This case, however, does not rebut Franciscan's argument that Plaintiff's unjust enrichment claim must fall should its other claims be deemed insufficient. Quite the opposite. That case supports Franciscan's assertion that Plaintiff's unjust enrichment claim relies on the same factual bases as her other claims and falls with them. *Id.*

Plaintiff's unjust enrichment claim must be dismissed along with her other claims.

### D. The Court Should Dismiss Plaintiff's Complaint with Prejudice

Because Plaintiff's claims cannot be sustained as a matter of law, the Court should grant Franciscan's Motion without leave to amend. Moreover, Plaintiff does not state any basis for leave to amend, nor does she request leave to Amend.

## CONCLUSION

For the foregoing reasons, and for those set forth in its Motion, Defendant Franciscan Alliance, Inc. respectfully requests that the Court dismiss Plaintiff's Class Action Complaint in its entirety without leave to amend.

Dated: December 15, 2025

Respectfully submitted,

**FRANCISCAN ALLIANCE, INC.,** an Indiana Nonprofit Corporation, *Defendant*

By: */s/ Michelle A. Reed*
Michelle A. Reed

Michelle A. Reed (*admitted pro hac vice*)
**PAUL HASTINGS LLP**
2001 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (972) 936-7475
michellereed@paulhastings.com

Stephanie Balitzer (*pro hac vice pending*)
**PAUL HASTINGS LLP**
515 South Flower Street, 25th Floor
Los Angeles, California 90071
Telephone: (213) 683-6153
stephaniebalitzer@paulhastings.com

Robert A. Anderson (ARDC: 6301274)
Bernard T. Puglisi (ARDC: 6334032)
**KRIEG DEVAULT LLP**
200 S. Wacker Drive, Suite 600
Chicago, Illinois 60606
Telephone: (312) 651-2400
randerson@kdlegal.com
bpuglisi@kdlegal.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system and served by electronic mail on counsel below:

Kyle Shamberg
**CARROLL SHAMBERG LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
(872) 215-6205

*Counsel for Plaintiff*

**PAUL HASTINGS LLP**

By: */s/ Michelle A. Reed*
Michelle A. Reed