**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

VERONICA WATSON, individually and on )
behalf of all others similarly situated, )
                              )
         Plaintiff,            )    Case No. 25 C 11043
                              )
        v.                  )    Judge Joan H. Lefkow
                              )
FRANCISCAN ALLIANCE, INC.,     )
                              )
        Defendant.

**OPINION AND ORDER**

Veronica Watson brings this action against Franciscan Alliance, Inc. (Franciscan) on behalf of a putative class of similarly situated individuals. Watson alleges that, unbeknownst to her and putative class members, Franciscan implemented third-party tracking technology on its website that unlawfully intercepted their communications with Franciscan. She asserts a claim for violations of the Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2511, and common law claims of intrusion upon seclusion and unjust enrichment. Franciscan moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 15.) For the reasons discussed below, the court grants Franciscan's motion.

**BACKGROUND[1]**

Franciscan is a nonprofit corporation headquartered in Indiana and organized under its laws. It operates hospitals throughout the States of Indiana and Illinois. As an extension of its healthcare services, Franciscan maintains a website, www.franciscanhealth.org (the website),

---

[1] This section is drawn from Watson's complaint. For the purposes of the motion to dismiss, Watson's well-pleaded allegations are accepted as true. *See Alarm Detection Sys., Inc.* v. *Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (citation omitted).

that allows visitors to search for physicians and medical facilities, explore health services, pay for care, and register for support groups and other programs. Watson is a citizen of Illinois and patient of Franciscan, who has used the website.

Watson's class action complaint broadly states that, without obtaining users' consent, Franciscan embedded third-party tracking technology on the website, namely, the Trade Desk tracking platform (Trade Desk). According to the complaint, Trade Desk operates on pages of the website where users search for medical specialists, research health conditions, locate treatment facilities, and schedule appointments. On these pages, Trade Desk collects a range of data on users' online behavior to target them with advertisements tailored to their interests and demographic characteristics. Data collected includes users' IP addresses and electronic communications between users and Franciscan.

For example, when a user searches for a specific medical condition and selects a provider, this information is automatically transmitted to Trade Desk, including the full name of the selected physician. Similarly, when a user schedules an appointment with a physician, Trade Desk intercepts this information, including the name of the physician, when the appointment will take place, and when the scheduling occurred. Healthcare-related search terms are also recorded as are searches for specific departments or treatments. Trade Desk further tracks time-stamp data showing precisely when each recorded user interaction occurs. This latter data allows Trade Desk to map users' healthcare-seeking activities and thereby identify connections between search terms, physicians' pages viewed, and conditions researched; distinguish between chronic condition management and acute health conditions; and assess the urgency of users' health concerns.

2

Watson alleges that, for each user, Trade Desk generates a persistent identifier known as the Trade Desk ID (TDID). This TDID serves as a digital fingerprint for individual users. When combined with users' IP addresses, TDID allows Trade Desk to distinguish between multiple users of the same network and also track users across multiple websites and devices. By tracking users' IP addresses and correlating that data with the TDID, Trade Desk can then individually identify users and map users' healthcare-seeking activities. This, in turn, enables Trade Desk to build its detailed profiles based on users' browsing behavior for advertisement targeting.

Additionally, Watson alleges that Franciscan's implementation of Trade Desk has been undertaken despite Franciscan's maintenance of a "Notice of Privacy Practices" that expressly states that the "marketing and sale of [users'] protected health information" will be made only with users' written permission. (Dkt. 1 ¶ 41.) Franciscan has failed to obtain any such consent. And although a separate Privacy Policy informs users that Franciscan "may use Individual Information … for any purpose and also may share this Aggregated Information with partners or other third parties," this policy also describes such information as being in a "non-individually identifiable form." (*Id.* ¶ 65.) Watson alleges that, via TDID and users' IP addresses, users' data has instead been disclosed to Trade Desk in a plainly identifiable form.

Based on these general allegations regarding the entire putative class of website users, Watson asserts that class members have suffered a range of harms related to the disclosure of their private healthcare information, including an invasion of their privacy, loss of the economic value of their personal health data, the undermining of patient trust, and statutory injury under the ECPA. She alleges that these harms to putative class members are ongoing.

Watson's specific allegations regarding herself are, however, considerably thinner. Here, Watson merely alleges as follows: She has been a patient of Franciscan for approximately five

years, during which she has used the website multiple times, including in the six months preceding the filing of her complaint. She has accessed the website on both her iPad and iPhone. On these devices, she has used Google Chrome, Microsoft Edge, and an application from Franciscan to enter the website. While on the website, she has searched for provider locations, doctors, and medical professionals. These searches have included searches for OBGYN and internal medicine specialists. Watson conducted these searches to obtain information on treatments and to receive health information.

Based on the foregoing, Watson filed suit on behalf of herself and a putative class of similarly situated individuals whose private healthcare information was disclosed to Trade Desk. Watson's class action complaint raises a claim for violations of the ECPA, 18 U.S.C. § 2511, (Count I) and common law claims of intrusion upon seclusion (Count II) and unjust enrichment (Count III). Franciscan, in turn, moves to dismiss Watson's class action complaint for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

**<u>LEGAL STANDARD</u>**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards* v. *Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in a plaintiff's favor. *See Park* v. *Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Cincinnati Life Ins. Co.* v. *Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual detail, accepted as true, to state a plausible claim for

4

relief that rises above the speculative level. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the jurisdictional sufficiency of a complaint, but it is otherwise "analyzed as any other motion to dismiss." *United Phosphorus, Ltd.* v. *Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc.* v. *Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). A facial attack on standing, such as here, "tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile* v. *Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citation omitted).

## ANALYSIS

As an initial matter, in her response, Watson agrees to voluntarily dismiss Count II of her complaint, which is a common law claim for intrusion upon seclusion. As such, the court will not address this claim, and only Watson's ECPA claim and her claim for unjust enrichment remain. The parties agree, however, that Watson's unjust enrichment claim rises or falls based on her ECPA claim. *Cf. Cleary* v. *Philip Morris Inc.*, 656 F.3d 511, 517–18 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."). As a result, the central question is whether Watson's ECPA may survive dismissal.

Franciscan first seeks dismissal of Watson's ECPA claim (and her other claims) under Rule 12(b)(1) for lack of standing, arguing that "any harm to her is purely hypothetical and requires the parties and the Court to engage in conjecture about whether she contends any of her own information was ever disclosed." (Dkt. 15 at 9.) Franciscan also seeks dismissal of Watson's

5

ECPA claim under Rule 12(b)(6) for failure to state claim. On this point, Franciscan argues that (i) the ECPA does not impose civil liability for procuring third-party interception; (ii) the ECPA, as a one-party consent statute, permits Franciscan to disclose communications it received from Watson and putative class members; (iii) Watson has failed to allege that identifying information was disclosed; and (iv) she has also failed to allege that any of her communications were intercepted. At their core, the latter argument and Franciscan's standing argument raise the same defect: Watson has failed to allege that she personally—rather than other, nameless putative class members—has been injured by Franciscan's disclosures to Trade Desk. Given the paucity of specific allegations regarding Watson, the court finds merit in this argument.

## I. Rule 12(b)(1) Standing

For federal jurisdiction to be properly exercised, standing must exist. *Spokeo*, *Inc.* v. *Robins*, 578 U.S. 330, 338 (2016). It "consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Plaintiffs bear the burden of establishing standing and, at the pleading stage, "must clearly allege facts demonstrating each element." *Id.* Further, in the case of putative class actions, the named plaintiff must herself demonstrate "that [she] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class." *Warth* v. *Seldin*, 422 U.S. 490, 502 (1975).

Franciscan's standing argument is a facial challenge based on the injury-in-fact requirement. "[A] plaintiff undergoing … a facial attack enjoys treatment of her allegations as true." *Bazile*, 983 F.3d at 279 (citation omitted). Even still, "bare and conclusory allegations … are insufficient" to overcome a facial challenge to standing. *Diedrich* v. *Ocwen Loan Servicing,*

*LLC*, 839 F.3d 583, 589 (7th Cir. 2016) (citation omitted). Moreover, a plaintiff will not satisfy the injury-in-fact requirement merely by pointing to a statute that authorizes suits brought under the statute. *See Spokeo*, 578 U.S. at 341. Rather, even where a statute authorizes suits, a plaintiff must allege a concrete and particularized injury to meet the injury-in-fact requirement. *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 427 (2021). For this, both tangible and intangible harms may suffice. *Dinerstein* v. *Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) (citing *TransUnion*, 594 U.S. at 425). When an intangible harm is asserted, however, the court must assess "whether the alleged injury has 'a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Id.* (quoting *TransUnion*, 594 U.S. at 415).

Watson asserts an injury-in-fact based on an intangible harm: the disclosure of private medical information. At common law, liability accrues for the disclosure of private information "where a defendant gives publicity to a matter concerning the private life of another, where the matter publicized is of a kind that would be highly offensive to a reasonable person, and is not of legitimate concern to the public." *Florence* v. *Ord. Express, Inc.*, 674 F. Supp. 3d 472, 480 (N.D. Ill. 2023) (quotation marks omitted) (citing Restatement (Second) of Torts § 652D). From this, courts have concluded that alleging the disclosure of medical diagnoses and health insurance information satisfies the injury-in-fact requirement, since such disclosure resembles the type of loss protected by the tort of public disclosure. *See, e.g.*, *Roper* v. *Rise Interactive Media & Analytics, LLC*, No. 23 CV 1836, 2023 WL 7410641, at *3–4 (N.D. Ill. Nov. 9, 2023). Further, under the Health Insurance Portability and Accountability Act (HIPAA), Congress has made it a criminal offense to knowingly disclose "individually identifiable health information"[2] to third

---

[2] The HIPAA statute defines "individually identifiable health information" as follows:

The term "individually identifiable health information" means any information, including demographic information collected from an individual, that— (A) is created or received by a health

7

parties. 42 U.S.C. § 1320d-6. This provides statutory guidance that the disclosure of private medical information to third parties can constitute an injury-in-fact for purposes of standing.

The question here, however, is whether Watson has adequately alleged the disclosure of her private medical information. *See Roper*, No. 23 CV 1836, 2023 WL 7410641, at *3. On the one hand, Watson's general allegations regarding Trade Desk and its tracking capabilities are quite detailed. Watson has alleged the types of medical data that Trade Desk intercepts, how this information is intercepted, and the purposes for which this data is intercepted. Stated in broad strokes, Watson has alleged that, on the webpages where Trade Desk operates, it tracks virtually every user interaction. On the other hand, Watson's specific allegations regarding her personal information disclosed to Trade Desk are significantly less detailed. Watson merely alleges that, as a patient of Franciscan, she accessed its website multiple times on various devices and platforms. During her use of the website, she searched for provider locations, doctors, and medical professionals. These searches included searches for OBGYN and internal medicine specialists. Watson's searches were conducted to obtain information on treatments and to receive health information.

These allegations place Watson's complaint a step removed from cases where courts have held that plaintiffs adequately alleged a disclosure of their private medical information. For instance, in *Hartley* v. *University of Chicago Medical Center*, a district court held that a patient had adequately alleged that a hospital system had disclosed individually identifiable healthcare

---

care provider, health plan, employer, or health care clearinghouse; and (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and—(i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.

42 U.S.C. § 1320d(6).

information—in this case, her status as a patient—when it relayed to a third party her private MyChart login data. No. 22 CV 5891, 2025 WL 2802317, at *4–5 (N.D. Ill. Oct. 1, 2025). Watson has not similarly alleged, however, that she logged in to any part of Franciscan's website or any other website, nor has she alleged that the website was anything other than a publicly accessible one. In *McClain* v. *Capital Vision Services, LLC*, a district court held that a patient had adequately alleged the disclosure of individually identifiable healthcare information when she had alleged that her healthcare provider had disclosed that she had scheduled an appointment with a provider. No. 25 CV 7675, 2026 WL 710926, at *5–6 (N.D. Ill. Mar. 13, 2026). But Watson has not alleged that she ever used Franciscan's website for appointment scheduling purposes.

Watson has also not alleged any specific diagnoses or treatments that she searched in the website. Instead, her complaint broadly gestures at her use of the website to search for OBGYN and internal medicine specialists. But where courts have found the disclosure of private medical information based on medical searches to violate ECPA, more specific treatment and diagnostic information has been alleged. *Compare Smith* v. *Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) (concluding named plaintiffs had adequately alleged an injury-in-fact where "the named plaintiffs included the specific medical diagnoses and treatments they inputted on LUMC's website"), *with Kurowski* v. *Rush Sys. for Health* (*Kurowski II*), 683 F. Supp. 3d 836, 843 (N.D. Ill. 2023) (internal quotations removed) (dismissing ECPA claim where plaintiffs "fail[ed] to allege any particular health or treatment information disclosure specific as to them").

Watson's specific allegations are also not reinforced by her general allegations regarding Trade Desk. Watson has alleged, for instance, that Trade Desk operates on website pages where

9

users search for medical specialists, research health conditions, locate treatment facilities, and schedule appointments. But as previously discussed, Watson has failed to allege that she researched specific health conditions, and she has not alleged that she scheduled any appointments via the website. The only webpages that Watson alleges Trade Desk operates on that she also alleges she visited are webpages dedicated to locating providers and searching for medical specialists, namely, undisclosed OBGYN and internal medicine specialists. But merely browsing and searching a healthcare provider's website does not convey private medical information. *Hartley*, No. 22 CV 5891, 2025 WL 2802317, at *6 (citing *Nguyen* v. *Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *5 (N.D. Ill. Aug. 8, 2025)).

And although Watson has broadly alleged that Trade Desk tracks medical information to target advertisements at Franciscan's patients, Watson has not alleged that she herself received these advertisements. Allegations that she had been targeted by healthcare-related advertising would provide some circumstantial evidence that her private medical information was disclosed. Without these allegations, her complaint again lacks a factual detail from which such a disclosure could be inferred. *See Mayer* v. *Midwest Physician Admin. Servs., LLC*, No. 23-CV-3132, 2025 WL 963779, at *3 (N.D. Ill. Mar. 31, 2025) (concluding plaintiffs had "alleged facts supporting the inference that [defendant] did in fact disclose their individually identifiable health information" when plaintiffs alleged that they began to receive advertisements after inputting healthcare information); *Smith*, No. 23 CV 15828, 2024 WL 3338941, at *2, 4 (emphasizing named plaintiffs' allegations that they received targeted advertisements related to their medical conditions); *cf. Kurowski II*, 683 F. Supp. 3d at 843 (citations omitted) (contrasting plaintiff's allegations, which were not well-pleaded, with those where a plaintiff alleged that she later received advertisements related to their healthcare conditions).

10

The *Kurowski* decisions, cited by Watson and Franciscan alike, are instructive. In each of *Kurowski I*, 659 F. Supp. 3d 931 (N.D. Ill. 2023), and *Kurowski II*, 683 F. Supp. 3d 836 (N.D. Ill. 2023), the court dismissed Kurowski's ECPA claim, since she had failed to adequately allege the disclosure of private health information. Although these dismissals were made under Rule 12(b)(6), a similar defect was at issue: Kurowski had introduced wide-ranging general allegations regarding injuries to class members, but she had failed to allege that she herself had suffered the disclosure of her own private medical information. *See Kurowski I*, 659 F. Supp. 3d at 935–36, 938–39; *Kurowski II*, 683 F. Supp. 3d at 842–43. As the court stated in *Kurowski II*, "Kurowski … fails to allege any particular health or treatment information disclosure specific as to them that Rush allegedly made to any third-party … . Kurowski cannot reasonably expect to bring a lawsuit related to the invasion of her medical privacy and completely evade revealing what it is that she alleges Rush disclosed to third parties." *Id.* at 843 (cleaned up). Only after she re-pleaded with "additional factual allegations regarding the information she contends was transmitted to third parties with Rush's knowledge and at its instance" did the court allow her ECPA claim to proceed. *Kurowski III*, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023). Kurowski had revised her prior complaint to allege that "Rush … transmitted the name and location of her personal physician, as well as her physician's specialty" and to allege "that this information was, in turn, used by at least Facebook to target her with particular advertising associated with her particular health conditions." *Id.*

Watson's 34-page complaint dedicates only two paragraphs to her individual experiences. The bare-bones allegations stated therein tell the court virtually nothing about the specific pages she clicked on, when she visited them, her medical conditions, any treatments sought, or her history of care. And there are no allegations that she was targeted with advertisements related to

11

her treatments or diagnoses. As such, even if the court assumes that all of Watson's data inputs on the website were captured by Trade Desk, her lack of specificity regarding those inputs renders her complaint "devoid of any factual support" that any of her private medical information was disclosed. *Hartley*, No. 22 CV 5891, 2025 WL 2802317, at \*7 (citation omitted) ("[O]ther than the lone allegation that she used the UCMC website to search for a primary care physician," plaintiff failed to plausibly allege a disclosure of her private healthcare information). Relying on *Smith*, No. 23 CV 15828, 2024 WL 3338941 at \*4, Watson argues that the unauthorized disclosure of private medical information constitutes a concrete harm for purposes of alleging an injury-in-fact. This is a principle that the court does not dispute. But here, unlike the plaintiff in *Smith*, Watson has failed to adequately allege any such disclosure. And Watson asserts no other basis for an injury-in-fact.

To have standing, it is not sufficient for Watson to allege injury to the putative class. *See Warth*, 422 U.S. at 502. She must allege an injury-in-fact to herself. *Id.* Such allegations must be well-pleaded, since the court is not required to take, as true, Watson's merely conclusional allegations.[3] *Cf. Diedrich*, 839 F.3d at 589. Watson has simply failed to meet this essential requirement. Accordingly, Watson's complaint must be dismissed without prejudice for lack of standing.[4] *White* v. *Illinois State Police*, 15 F.4th 801, 808 (7th Cir. 2021) ("[A] dismissal on standing grounds can never be with prejudice.").

---

[3] Conclusional allegations that the court need not accept as true include those that Watson relies on to argue that she has sufficiently pleaded an injury-in-fact, *e.g.*, "Plaintiff and Class members have suffered an invasion of their privacy through the unauthorized interception of their electronic communications and healthcare-related activities" and "[t]he interception of these communications violated Plaintiff's and Class members' reasonable expectation that their interactions with a healthcare provider would remain private." (Dkt. 18 at 7) (citing dkt. 1 ¶ 69.)

[4] Since the court dismisses Watson's complaint for lack of standing, it declines to address Franciscan's remaining arguments for dismissal. Nevertheless, the court notes that a similar analysis would apply, under Rule 12(b)(6), to Franciscan's alleged violations of the ECPA through disclosure of Watson's individually identifiable healthcare information.

## <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the court grants Franciscan's motion to dismiss. (Dkt. 15.) The court dismisses Counts I and III without prejudice to Watson re-pleading facts consistent with this opinion, if they exist. The court dismisses Count II, which was withdrawn, with prejudice. Watson has until June 25, 2026, to file an amended complaint. If she elects not to do so, the dismissals without prejudice will be converted to dismissals with prejudice on June 26, 2026. A status hearing is set for July 1, 2026 at 9:30 a.m. in courtroom 2201.

Date: June 11, 2026

_____
U.S. District Judge Joan H. Lefkow